LITTLE
ROCK,
July, 1838.

CHANDLER
*vs.*
BYRD.

## SARAH CHANDLER *against* RICHARD C. BYRD.

### ERROR *to Pulaski Circuit Court.*

The securities of the defendant in a bond taken of him on a capias in detinue under the statute, are his *bail;* and are only *personally* responsible for the defendant, not answerable in all events for the delivery of the property sued for.

The liability of the defendant is wholly personal, and the bail are liable to no greater extent than he. By the condition of the bond, the defendant binds himself "to deliver the property to the plaintiff, and pay the damage for the detention, and costs of suit," and the bail are bound with him.

In an action upon such bond, an assignment of a breach, that judgment was rendered against the *administrator* of the defendant for the property, and that such judgment remains in full force and effect, and unsatisfied, does not constitute a good breach.

The sureties in a bail bond in detinue may surrender their principal in discharge of bail, in the same manner as in other actions, and, as in other actions, are only liable for the *personal* responsibility of their principal—and the death of the principal exonerates them from responsibility.

The plaintiff in error brought an action of detinue in the Supreme Court of the Territory of Arkansas, to the April Term thereof, 1823, against one *Alexander W. Cotton,* for four negroes, and sued out a capias in detinue under the statute. *Cotton* was taken upon the capias and entered into bond to the plaintiff, on the 31st of October, 1827, with the defendant in error and John H. Cocke as his securities, in the sum of two thousand four hundred dollars, conditioned that he would appear at the return term and make good his claim to the negroes, and that if judgment should be given against him at that or any subsequent term, he would deliver said negroes to the plaintiff, and pay all damages assessed for their detention, and costs of suit. It is upon this bond that the suit below was brought.

*Cotton* appeared at the return term of the writ in detinue, and the suit was continued, until by his death in November, 1828, it abated. The suit was afterwards revived against his administrator against whom judgment was obtained for the negroes by the plaintiff in error, at the July Term of the Supreme Court, 1830, which judgment is unsatisfied.

An action of debt was then commenced on the bail bond by the plaintiff in error, against the defendant in error and the said John H. Cocke, to June Term, 1831, of the Court below, and after various steps had been taken in the cause, the defendant in error, against whom alone the suit proceeded, filed two amended pleas. To each

of these the plaintiff filed a demurrer, and the demurrer to the first was sustained, and to the second overruled. The first plea was not afterwards amended. The second, which the Court below adjudged good, alleged in bar the death of *Cotton* before judgment obtained in detinue, and the consequent abatement of the suit. After the plaintiff's demurrer to this plea was overruled, she filed her replication to the plea, alleging as an answer to the plea, that after the death of *Cotton* the suit was revived and final judgment obtained therein, against his administrator, and that such judgment was entirely unsatisfied. To this replication the defendant demurred, and his demurrer being sustained, the plaintiff suffered judgment to be rendered on the demurrer, and sued his writ of error. The errors assigned were that the Court below erred in overruling the demurrer to the second amended plea, and in sustaining the demurrer to the replication.

LITTLE<br>ROCK,<br>July, 1838.<br>CHANDLER<br>*vs.*<br>BYRD.

HALL and CUMMINS, for plaintiff in error:

TRAPNALL and COCKE, *contra:*

The bond and condition having been set out on oyer, the defendant by his second amended plea, relies upon the fact that his principal, the said *A. W. Cotton*, appeared at the return of the process mentioned in the condition of the bond, and made good his right to the slaves then in controversy, and no judgment in that suit was given against him at that or any subsequent term of said Court until his death, at which time there was no breach whatever of the condition of his bond.

The replication to that plea admits all of the facts stated in it, but undertakes to avoid them, and relies upon the facts that after the death of said *Cotton*, the principal, David Rorer, administrator of his estate, appeared, and the suit was revived against him as such administrator, and judgment subsequently obtained against him as administrator, for some of the slaves in controversy in that suit, damages, &c.; that the slaves were not delivered, or their value paid, &c. to the plaintiff.

The judgment against the replication rests upon the ground that the obligation of the defendant was simply an obligation of bail; that in all cases the obligation of the bail ceases upon the death of the principal before judgment; that their obligations being personal merely, that is, an undertaking that their principal shall do and perform certain acts, the performance of which are regulated by law, and hence

LITTLE
ROCK,
July, 1838.

CHANDLER
*vs.*
BYRD.

they have by law the power (at any time before their liability becomes fixed,) of arresting their principal and surrendering him in discharge of their obligation. They are in law considered as his prison. He is by law placed in and under their custody and keeping, and they have the power at all times to restrain his action so as to keep him subject to their control. This is the meaning and very essence of bail, and there is no exception to it known to the law. The extent of their liability, and the conditions upon which their obligation becomes absolute, are clearly defined by law; and as to the circumstances under which their liability becomes absolute, there is no statute changing them. See 2 *Com. Dig.* 51, *n. y.*; 1 *Johns. Cas.* 359; 9 *J. R.* 84; 2 *Com. Dig.* 50.

That bail, either common or special, were discharged of all obligation whatever by the death of their principal before judgment, is fully established by all the authorities. 2 *Com. Dig.* 53, (2,) 5; 1 *J. R.* 515; 2 *Mass. Rep.* 435; 2 *Com. Dig.* 58–9, *and authorities there referred to;* 2 *Ch. Bl.* 292, *n.* 33.

That in this case, as in all other cases of bail, the plaintiff has had all the benefit conferred by law. The defendant was arrested and imprisoned, (*in the custody of his bail it is true*, but that is as effectual and beneficial to her as if he was imprisoned in the common jail), and so remained until his death, which was before any recovery against him. Upon his death the parties changed, and the bail never were bail or in any wise security for the new party, who was himself by law required to give security for the due and faithful performance of the trust reposed in him.

The contract of the bail was as it always is, conditional. One of the conditions in this instance was that the defendant in the original case should appear at the return of the writ against him and make good his claim to the property, &c., and if judgment should be given against him at that or any subsequent term, &c., he would deliver the property, &c. This was an act (may it not well be said a personal act,) to be performed by the defendant, *Cotton* himself, and upon his failure to perform which the liability of the bail first attached. Did he fail?— Certainly he did not. Then when did the obligation of the bail attach? Certainly never.

And this is the true distinction between this kind of obligation or contract and a contract where the obligation commences at the time of making the contract. In the former something subsequent and con-

tingent must appear before any legal obligation attaches, and until the happening of the event on which the obligation is to attach there is no liability whatever. In the other case, the obligation commencing with the contract continues until it is discharged or extinguished, but in this case the contingency on which the obligation of the bail was to attach had not happened when *Cotton* died, and never could happen afterwards, either by the express stipulation of the contract or any condition thereof expressed by law.

It will be further seen that the conditions of the bail bond in detinue are substantially the same with those in debt. *Dig.* p. 318, 459.

In this case, RINGO, *C. J.*, having been of counsel, did not sit.

LACY, *Judge*, delivered the opinion of the Court:

This was an action of debt, commenced by the plaintiff in error against the defendant and John H. Cocke, as securities for *Alexander W. Cotton*, on a bail bond.

" The undersigned, *Alexander W. Cotton*, of the county of Pulaski, in the Territory of Arkansas, as principal, and R. C. Byrd and John H. Cocke, his sureties, by these presents bind themselves, their heirs, executors, and administrators, jointly and severally to pay to *Sarah Chandler* the just and full sum of two thousand and four hundred dollars, lawful money of the United States. Witness their hands and seals, this thirty-first day of October, eighteen hundred and twenty-seven.

" The condition of the above obligation is such, that if the above *Alexander W. Cotton* be and appear at the next April term of the Superior Court in and for the Territory of Arkansas, in the year eighteen hundred and twenty-eight, and shall then and there make good his claim to the slaves mentioned in the declaration, and if judgment shall be given against him at that or any subsequent term, he, the said *Alexander W. Cotton*, shall deliver to the plaintiff, the said *Sarah Chandler*, the said negroes, Polly, Andy, Angeline, and Marion, mentioned in the said declaration, and if he shall pay all damages which shall be assessed for the detention of said negroes, and shall pay the costs of suit, then this obligation to be void and of no effect, otherwise to remain in full force and virtue. In testimony whereof, they have hereunto set their hands and seals the day and year above written.

A. W. COTTON, [SEAL.]
R. C. BYRD, [SEAL.]
JOHN H. COCKE, [SEAL.]"

LITTLE
ROCK,
July, 1838.

CHANDLER
*vs.*
BYRD.

The service of the summons or capias on John H. Cocke was quashed for insufficiency, and as the principal, *Alexander W. Cotton*, was not joined in the action, the case was permitted to proceed to trial in the names of the present plaintiff and defendant. It is deemed unnecessary to notice any of the steps taken in the pleadings until the defendant had leave to file his amended pleas. He craved oyer of the bond or writing sued on, which was allowed, and then put in two amended pleas in bar of the action. To each of the pleas there was a separate demurrer and issue. The demurrer to the first plea was sustained, and judgment entered up against the sufficiency of the plea. The demurrer to the second plea was overruled, and the plaintiff had leave to reply. She then filed her replication, and the defendant demurred to it. Judgment was pronounced sustaining the demurrer and declaring the replication insufficient.

To reverse the decision of the Court below on these points the plaintiff now prosecutes her writ of error.

The assignment of errors presents several questions for consideration, but they all substantially resolve themselves into one, which is, was the second amended plea good in bar of the action; or in other words, was the demurrer to the replication rightly sustained?

The plea and replication cannot stand together. If the former is good the latter must be bad, and in deciding the first point we are compelled necessarily to examine and pass upon the second.

The second amended plea as set forth is, "that the defendant ought not to be charged with the debt in the said declaration mentioned, because he says that the said *Alexander W. Cotton*, after the making of the said writing obligatory, to wit: at the said April term of the said Superior Court in and for the Territory of Arkansas, held in the year eighteen hundred and twenty-eight in said condition mentioned, did appear, and did then and there defend and make good his claim to the slaves mentioned in the declaration, and such proceedings were thereupon had in said suit in said condition mentioned, that the same was continued in said Superior Court without any judgment whatever having been given for the said plaintiff against said *Alexander W. Cotton* for said negroes or any or either of them, until the 25th of November, eighteen hundred and twenty-eight, as will more fully and at large appear by reference to the record thereof still remaining in the said Superior Court; and the said defendant in fact says, that *Alexander W. Cotton*, on the said 25th day of November, eighteen hur

dred and twenty-eight, did die at New Orleans, to wit, at the county of Pulaski aforesaid, and that the said suit in this condition mentioned, afterwards, to wit, on the same day and year last aforesaid, became and was abated by reason of the death of the said *Alexander W. Cotton*, and that no judgment was ever given for said negroes or any or either of them in favor of the said plaintiff against the said *Alexander W. Cotton*, and this the said *Richard C. Byrd* is ready to verify; wherefore," &c.

LITTLE ROCK,<br>
July, 1838.<br>
CHANDLER<br>
*vs.*<br>
BYRD.

The replication is accurately plead, and the legal consequences that flow from it are stated with particularity and certainty. But it wholly avoids the issue tendered by the plea, which is, that the death of the principal before final judgment rendered against him discharges his bail, and consequently there is no cause of action against the defendant. The replication alleges that the suit was revived in the name of David Rorer, the administrator of *Alexander W. Cotton*, and that final judgment in the action of detinue was obtained against him at the July term of the Superior Court, 1830, and that judgment still remains unreversed and in full force and effect.

The question then recurs, is the plea good, or ought the demurrer to it to have been sustained?

This proceeding is had under an act of the Legislature, approved December 22d, 1818. See *Digest*, 459. "Sec. 6. In all actions of detinue where the plaintiff shall file in the office of the Clerk of the proper Court, an affidavit stating that the property in the declaration mentioned is his property, and that he is lawfully entitled to the possession thereof and the value thereof, and that the defendant unlawfully detains the same, the Clerk shall issue a writ of capias in detinue and endorse thereon the amount as sworn to, and direct the Sheriff to take bail of the defendant in double that sum, and it shall be the duty of the Sheriff to whom the writ may be directed, to take the defendant's body and commit him to the jail of the county, or take a bond of such defendant to the plaintiff with sufficient securities in double the sum so sworn to, conditioned that he be and appear at the term of the Court to which the writ is returnable, and then and there to defend and make good his claim to the property in the declaration mentioned, and that if judgment shall be given against him at that or any other subsequent term, *he will deliver to the plaintiff the property for which judgment shall be so given*, and pay all damages which shall be assess-

E

LITTLE ROCK, July. 1838.

CHANDLER vs. BYRD:

ed for the detention thereof, and costs of suit; and the writ and bond shall be returned as in other cases."

Is the principal and his sureties bound by this act as in ordinary cases of bail, such as debt, covenant, actions on the case, and the like, or is it an absolute and unconditional undertaking on his and their part to deliver the property or specified thing sued for, whenever judgment shall be obtained against the defendant or his administrator?

By the act of the Legislature, passed July 2d, 1837, (see *Digest*, 317.) "SEC. 12. In all actions of debt founded on any judgment, writing obligatory, bill or note in writing, for the payment of money or other property, in action of covenant, and in actions on the case, where the plaintiff makes affidavit or affirmation of a real subsisting debt and of the sum in which he verily believes the defendant ought to give bail to secure such debt and costs, it shall and may be lawful for the plaintiff to sue out of the Clerk's office of the proper county a writ of summons, as is prescribed in the preceding section, or a writ of *capias ad respondendum*, on which capias the time, species of action, and the sum for which bail is demanded, shall be endorsed on such writ. It shall be the duty of the Sheriff to whom such *capias ad respondendum* may be directed, to take the defendant's body, and commit him to the common jail of the district, (county), or to take a bond of the defendant, with sufficient securities, in the sum endorsed on such writ, conditioned that the defendant shall be and appear at the term of the Court to which the writ is returnable, and that if judgment be given at that or any subsequent term against him, that he will pay the debt or damages, as the case may be, and costs, and surrender himself in execution, or that the securities will do the same for him."

Is the obligation here sued on, a bail bond? To determine this question we must enquire into the meaning of the term *bail*, and see to what extent the principal and his sureties are liable.

Bail signifies a guardian, or one who has the legal custody of another. See 2 *Comyn* (*A*) (*Bail*). The word means to deliver, because the defendant is bailed or delivered to his securities. 2 *Chitty's Blackstone*, 290. The method of putting in bail to the Sheriff, is by entering into a bond or obligation, with one or more sureties, to insure the defendant's appearance at the return of the writ, which obligation is called the *bail bond*. Upon the return of the writ, or four days afterwards, the defendant must appear according to its summons, and the appearance is effected by putting in and justifying what is com-

monly called *bail to the action*, whereby the bail jointly and severally undertake that if the defendant be condemned in the action, he shall pay the costs and condemnation, or that they will do it for him.

Special bail may be discharged by surrendering the defendant into custody within the time allowed by law, for which purpose they are entitled to a warrant to apprehend him. They may even have a writ of *habeas corpus* to bring his body into the Court of King's Bench, and that too when he is confined in a civil action or upon a criminal charge. 7 *T. R.* 226; 6 *Mod.* 221.

After judgment against the principal, if he does not pay the con-demnation nor surrender himself to prison, a *scire facias* goes against the bail.

And the *capias ad satisfaciendum* ought to have eight days between the *teste* and the return. 2 *Comyn* (*R.*) 4, (*R.*) The bail may plead payment or satisfaction after judgment against the principal, so if he pay, the Sheriff being taken upon a *capias ad satisfaciendum.* 2 *Comyn*, (2,) 2, 6. So after judgment and error brought, and before judg-ment affirmed, if the plaintiff in the original action release to the de-fendant all demands against him for damages, and afterwards the judgment be affirmed, the bail in the suit shall nevertheless be ex-cused.

The bail is not considered fixed until the capias is returned against the principal *non est inventus*, and filed upon record, and then they cannot be discharged. 4 *Johnson's Rep.* 407; *Beekley* vs. *Cotton;* 1 *Johnson's Rep.* 505; 2 *Mass. Rep.* 485, *Champion* vs. *Noyes.* But the bail may plead a discharge, if the principal die before the capias is returned and filed of record. *Comyn Dig.* (*Q.*) 2, (*Q.*) 52.

"The death of the principal at any stage of the proceedings be-fore the return of the *capias ad satisfaciendum* against the principal dis-charges the bail; and the bail may take advantage of the death of the principal, either by pleading it in bar or by applying to the Court in term time, or to a Judge in vacation, for permission to enter an *exone-retur* on the bail piece." See *Petersdorf's Treatise on Bail,* 216, 217.

The Court will now test the question before them by the principles here laid down. By a careful inspection and comparison of the acts of 1807 and 1818, regulating the proceedings in cases of bail, and fix-ing the liability of the defendant and his sureties, it will be perceived that the language of the two statutes are very similar, and the last act almost a literal copy from the first. In one instance the condition of

LITTLE ROCK, July, 1838.

CHANDLER vs. BYRD.

the bond is, in case judgment shall be given against the defendant " he will pay the debt or damages, as the case may be, and costs, and surrender himself in execution." In the other, the condition is, that the defendant, in case judgment be given against him, " will deliver to the plaintiff the property, and pay all damages that shall be assessed for the detention thereof, and costs of suit." By both statutes the Legislature makes it the duty of the Sheriff, when the proper affidavit is filed by the plaintiff with the Clerk, to take the body of the defendant and commit him to prison, or take a bond from such defendant, with sufficient securities, for his appearance.

They call it in each of the acts a bond, and treat it as *bail* throughout the whole proceedings. It is declared by the act of 1818 to be bail; and the Clerk in issuing the capias in detinue, is required to endorse on the writ " the amount sworn to, and direct the Sheriff to take *bail* of the defendant in double that sum."

The very words of the statute determine that it is bail. Admitting that the Court may be mistaken in this view of the case, let us now see what is the proper legal construction of the act. The validity of the bond is derived from and depends upon the authority of the act of the Legislature; and the liability of the defendant and his sureties cannot be enlarged or diminished beyond its legal consequences. That in an action of detinue it was the intention and object of the Legislature only to hold the bail personally responsible for the principal is obvious, from the fact that the law directs the Sheriff to take the body of the defendant, and not the property or specified thing sued for. Had it been intended to make the sureties answerable in all events for the delivery of the property, it would have directed that the property itself be taken into custody, and not the body of the defendant. Should the defendant refuse to give security according to the requisitions of the act, has the Sheriff any right or authority to seize and retain possession of the property? Certainly not. The liability of the defendant is then wholly personal, and if that be the case, it cannot be contended that the securities are liable to a greater extent than their principal. What are the terms of the bond, and how far is it binding? The securities do not stipulate that if judgment is rendered against the administrator, executor, or legal representative of the defendant, that they will deliver the property or pay the value of it, and damages, to the plaintiff. There is not even any express words that they will deliver the property in case judgment is rendered against the princi-

pal, but the condition is, "that the defendant will deliver the property to the plaintiff, and pay the damages for the detention, and costs of suit." Although there are no express terms including the securities, still this Court believe, upon a fair and just construction of the act, they are bound with their principal. How does the case now stand on the record? Briefly as follows: The plaintiff, *Sarah Chandler*, sued out a *capias* in detinue, for the recovery of the slaves in the declaration mentioned, and held the defendant, *Alexander W. Cotton*, with his sureties, Richard C. Byrd and John H. Cocke, to bail. Judgment was never given against *Cotton* in his lifetime, but the suit abated by his death, and was revived in the name of David Rorer, his administrator, against whom the plaintiff obtained judgment at the July term of the Superior Court in 1830. On this state of facts, the sureties in the bail bond are sought to be made liable.

The replication assigns for a breach of the condition of the bond, that judgment was rendered against the administrator for the slaves in controversy, and that it remains in full force and effect, and unsatisfied. Does such an assignment constitute a good breach? There is no such stipulation or condition contained in the bond; nor is there any such implied covenant in the deed, arising from any just legal presumption. The statute gives validity to the bond, and the parties to it cannot be held responsible for any condition not contained in it, or deducible from its legal tenor and effect.

In an action of detinue, the judgment is in the alternative, that the plaintiff do recover the goods, or the value thereof, if he cannot have the goods themselves, and his damages for the detention, and his full costs of suit. 1 *Chit. Plead.* 683; *Tidd's Prac.*, 388. The form of the judgment in an action of debt, covenant, case, and the like, is essentially different from that in detinue; and this is the reason why the bail bond in each of the cases is made to correspond precisely with the respective judgments. The liability of the sureties on the bonds is the same, for the mere difference in the terms of the expression that in case "judgment shall be rendered against the defendant, he will deliver the property, and pay damages for the detention thereof, and costs of suit," or that "he shall pay the debt, damages, and costs, or surrender himself in execution," does not at all vary the legal effect of the two instruments. Suppose judgment had been rendered against the defendant in an action of detinue, could he not discharge himself and thereby exonerate his securities, by paying the value of the property

LITTLE ROCK, July, 1838.

CHANDLER
vs.
BYRD.

LITTLE
ROCK,
July, 1838.

CHANDLER
vs.
BYRD.
and damages for the detention, provided the plaintiff would accept the same in full satisfaction of his demand? If the plaintiff release all claim against the defendant, or receive accord and satisfaction in lieu of his judgment, could not the sureties plead either of these facts in bar of the action brought against them for a breach of the condition of the bond? Would the plea be good? That they would form a good bar cannot be doubted. If this be true, then the bond sued on is not absolute and unconditional for the delivery of the property or specific thing. If these pleas be not good and sufficient in bar of the action, then might a plaintiff have two satisfactions for the same or one judgment, which is manifestly unjust and illegal. Suppose after judgment given against the defendant he had removed the slaves beyond the jurisdiction of the Court, or the plaintiff had elected to take the value of them, or during the pendency of the suit they had died, would the sureties still have been bound for their unconditional delivery? Most surely not; for that would be holding them responsible on the bond for the performance of a condition which was possible at the time of making it, but which afterwards might become impossible by the act of God, the act of the law, or or the act of either the plaintiff or the defendant, and the happening of any of these things will, says Blackstone, "discharge the condition and save the penalty." " For no prudence or foresight of the obligator could guard against such a contin gency." Co. Litt. 206; Black. Com. 341.

That the bail in such a case is only responsible as in other actions, is apparent from the condition of the obligation itself, and the evident intention of the Legislature. Should the defendant in the action refuse or fail to deliver the property, and should his bail become apprehensive that he was not acting with good faith, the law gives them a warrant to apprehend him, that they may render him in discharge of their liability. This authority is delegated to them for the purpose of indemnifying themselves against fraud or loss; and this is the reason they are said to be his guardians and keepers, he being in legal contemplation, in their custody.

Now, what power have they over his administrator, or the property of their principal? None at all. Their guarantee is the good faith and personal responsibility of the defendant, and not that of his administrator or legal representatives, whom they may not know, and whom they may be unwilling to trust. Had the bail surrendered their principal, either before or after judgment, would they not be dis-

LITTLE
ROCK,
July, 1838.

CHANDLER
vs.
BYRD.

charged, and would not the plaintiff in the action be in as good a condition as if the Sheriff had first committed the defendant's body to prison? The surrender would certainly have discharged them, provided their responsibility had not been previously fixed by the return of *non est inventus* on the *capias ad satisfaciendum.* Admitting this to be true, then the sureties on the bail bond in the case now before the Court are only liable for the personal responsibility of their principal, as in other cases. The statute treats the obligation as a *bail bond,* and calls it *such,* and of course, the Court are bound to presume that it is one, and to apply to it the rules and principles that govern in other cases of a similar kind.

The doctrine on the subject of bail is so clearly and incontrovertibly established, and so well founded in reason and authority, that it cannot be easily mistaken or misapplied. The sureties at any stage of the proceedings, may excuse themselves from all liability, both before and after judgment, provided the *bail* be not *fixed,* as heretofore explained, by showing any thing by which it appears that the defendant is relieved, for it is unjust " that the bail should continue responsible after the principal is discharged." *Petersdorf on bail,* 390. The bail may discharge themselves by pleading payment, release, accord and satisfaction, or any other matter that will show the plaintiff's demand was satisfied, or the surrender or death of the principal, in bar of the action. The defendant in this instance alleges that the condition of the bond was complied with, and that *Alexander W. Cotton* did, at the April Term of the Superior Court, in and for the Territory of Arkansas, held in the year eighteen hundred and twenty-eight, appear and make good his claim to the slaves mentioned in the declaration, and that the suit was continued without any judgment having been given against him, until the 25th day of November, eighteen hundred and twenty-eight, as the record shows, and that on that day he died within the jurisdiction of the Court, and by reason of his death the writ abated, and that no judgment was given for said negroes, or any or either of them, against him during his lifetime, and in favor of *Sarah Chandler,* the present plaintiff. The demurrer to the plea admits these facts.— It has already been shown that the obligation sued on is a *bail bond* to all intents and purposes, and that being the case the rule is uncontradicted and conclusive, that the death of the principal or the defendant exonerates and discharges the bail, and forms a good bar to the action. The demurrer to the plea was then rightfully overruled. The

LITTLE
ROCK,
July, 1838.

CHANDLER
vs.
BYRD.

replication instead of responding to the plea and taking issue upon it, entirely evades its legal conclusion, by setting up new matter in avoidance. If the plea is good in bar to the plaintiff's cause of action, then the replication must be defective. The demurrer to the replication was then properly sustained. The plea fully answered the cause of action, for it alleged a fact which in the opinion of this Court wholly destroyed it, and set it out in such a manner as to show that the condition of the bond was fully and substantially complied with by the defendant, according to the requisitions of the statute.

There then being no error in the record, the judgment of the Court below must be affirmed, with costs.